IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| BATINA S. ALAO, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:15-cv-00635-NKL |
| CAROLYN W. COLVIN,<br>Acting Commissioner<br>of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Plaintiff Batina Alao seeks review of the Administrative Law Judge's decision denying her application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

**I.     Background**

**A.  Medical History**

Alao was born on April 6, 1982, and became unable to work on May 13, 2011.

From 1989 to 2002 Alao attended Marshall Public Schools and was involved in the special education program. In 2002 she was only able to turn in homework assignments 80% of the time and complete tests with 60% accuracy. In 2001 her individualized education plan indicated that she needed extra support to be successful and she was placed outside of the regular classroom 21% of the time. During her time in

1

school Alao was administered a number of IQ tests, all of which returned scores of at least 70, placing Alao in the low average intellectual functioning range.

In 2010, Alao sought treatment for numbness, tingling, and paresthesia of the left thigh and minimal back discomfort. She was treated for bulging intervertebral discs. In 2011 she was treated for numbness, tingling, and paresthesia of both hands, shoulder pain, and neck discomfort. Her doctors noted acute and chronic degenerative changes in her spine, as well as worsening Attention Deficit Disorder. Her physical symptoms and treatment continued through 2012.

In January 2012 Alao received emergency treatment at Fitzgibbon hospital for depression and her psychiatrist recommended admission. She was diagnosed with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. She continued to receive treatment for depression after discharge.

In July 2012 her psychologist administered an IQ test and opined that Alao could still make routine work decisions without supervision and sustain concentration, persistence in tasks, and adequate pace in productive activity in a low stress/low demand work setting. The psychologist noted that he did not believe the IQ scores reflected Alao's actual abilities as she did not appear to be consistently putting forth her best effort. He further noted that Alao interacted in a superficial manner, overemphasized her symptoms, and displayed affective responses inconsistent with the manner in which she stated she felt. Alao was diagnosed with mood disorder and borderline to mild mental retardation.

In 2013, Alao continued to receive mental health treatment and was prescribed a variety of medications to address her symptoms. Her treatment visits revealed varied progress. In October 2013 she was administered another IQ test. Her scores fell in the Mild Mental Retardation range of intellectual functioning.

### B. ALJ Decision

Alao appeared at a hearing before an ALJ in October 2013. She testified that she had difficulties being around large numbers of people, processing information, and dealing with money. She testified that she had successfully attended school and performed various jobs, but generally required assistance. She stated that when her son was younger she was able to care for him, but her mother helped her. She testified that she cannot follow recipes.

The ALJ concluded that Alao had not engaged in substantial gainful activity since her alleged onset date of May 13, 2011. She further stated that Alao had the following physical severe impairments: cervical dystonia, degenerative disc disease of the cervical and lumbar spine, status post open reduction and internal fixation of a fracture of the left ankle, fracture of the fifth toe of the right foot, morbid obesity. Alao had severe mental impairments variously diagnosed as mood disorder, major depressive disorder, attention deficit hyperactivity disorder, obsessive compulsive disorder, post-traumatic stress disorder, generalized anxiety disorder, borderline personality disorder, and borderline intellectual functioning. Tr. at 16. The ALJ then found that Alao's impairments did not meet or equal a listed impairment. Tr. at 16. The ALJ assessed Alao with the following residual functional capacity (RFC):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except that she could lift and carry up to 10 pounds both frequently and occasionally; she could stand and walk up to 2 hours in an 8 hour day and sit up to 6 hours in an 8 hour day; she could occasionally climb ramps and stairs, bend and stoop; she could never climb ladders, ropes or scaffolds; she needed to avoid concentrated exposure to cold, heat, humidity, vibration, unprotected heights, and fast moving machinery; she could occasionally reach to shoulder height bilaterally; she was limited to simple, unskilled work, consisting of 1-2 step instructions; she could tolerate occasional interactions with coworkers, supervisors, as well as the general public, on a casual basis; and she was limited to low stress work, defined as making simple decisions, simple judgments and tolerating routine changes.

Tr. at 20. At the administrative hearing, the vocational expert testified that a person with this RFC would be able to perform jobs such as a dowel inspector, lens inserter, and bench hand. Relying on this testimony, the ALJ concluded that Alao is capable of maintaining substantial gainful activity.

## II. Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination of whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

**III. Discussion**

Alao argues the ALJ did not properly consider whether she meets Listing 12.05(c).

In evaluating whether a claimant is disabled, the ALJ must consider whether the claimant qualifies for benefits based on the Listing of Impairments. 20 C.F.R. Part 404 Subpart P Appx. 1. If the claimant's disabilities equal or exceed an impairment in the Listings, the claimant must be found disabled and awarded benefits. *Brown ex erl. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004). Sherwood argues that he should be awarded benefits because his disabilities meet Listing 12.05(c), which requires the claimant to show:

> (1) a valid verbal, performance, or full scale IQ of 60 through 70;
> (2) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; and
> (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006); 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05(c). "An impairment that manifests only some of these criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). If Alao meets Listing 12.05(c), she is entitled to benefits, regardless of whether she can perform gainful activity. *Id.* at 901.

Defendant does not contest that Alao meets the third prong of the Listing. Therefore, the only question is whether she satisfies the first two prongs of the Listing.

In evaluating the second prong, the ALJ considered Alao's adaptive functioning, and concluded that she did not meet her burden of proof in establishing deficits in

adaptive functioning manifested before age 22.  The ALJ noted that between 2002 and 2005, Alao worked as a Psychiatric Aide, which constitutes semi-skilled work.  She has also worked at various points as a cashier, hospital food service worker, meat production worker, and fast food worker.  Alao graduated from high school with the help of special education and attended three years of college; she is only nine credits short of an Associate's Degree and dropped out of the program because she broke her ankle, not due to an inability to complete the courses.

The ALJ also concluded that Alao's activities of daily living are inconsistent with significant deficits in adaptive functioning.  Alao reported no problems with personal care, drives regularly, and shops and cooks without significant difficulty.  She is able to attend doctor's visits and her son's school and sports activities.  In November 2011 she was volunteering 18 hours per week at the Lighthouse in order to get TANF.

Alao contends that the ALJ improperly concluded that her ability to work and attend classes meant that she does not have deficits in adaptive functioning, as Alao required assistance to complete these tasks.  For example, Alao testified that she failed most of her classes and attended tutoring, received help with her job as a Psychiatric Aide, and had to have her driving test read aloud to her.

Listing 12.05(c) does not describe the level of severity needed to find a "deficit in adaptive functioning."  Alao contends that the deficit need not be "marked" to satisfy Listing 12.05(c) because such a requirement would make the listing redundant with Listing 12.05(d).  However, in cases in which the Eighth Circuit has addressed the "deficit in adaptive functioning" requirement, it has not distinguished between the extent

6

of the deficit required to satisfy the different subparts of Listing 12. *See Cheatum v. Astrue*, 388 Fed.Appx. 574, 576-77 (8th Cir. 2010). Moreover, the Eighth Circuit's analysis of a similar case suggests that regardless of the level of severity required, Alao's level of functioning is above that which would constitute a "deficit in adaptive functioning" for the purposes of 12.05(c). In *Cheatum v. Astrue*, the Eighth Circuit explained,

> There is no indication in the record that the school's recommendation of Cheatum's classroom placement was made by a qualified mental health professional. Further, Cheatum testified that her school work suffered because she was caring for her mother who was sick with cancer and she had to commute between towns to attend school. The evidence also showed that Cheatum had maintained employment in semi-skilled and unskilled positions for many years. She was able to perform activities of daily living and light housework, drive a car, help prepare meals, and care for her father who was suffering from Alzheimer's. In addition, Dr. Michah Mazurek, a licensed psychologist who evaluated Cheatum in March of 2007, diagnosed Cheatum as having "Borderline Intellectual Functioning," as opposed to mental retardation. . . . Accordingly, the Commissioner's conclusion that Cheatum failed to establish the deficits in adaptive functioning necessary to meet Listing 12.05[(c)] is supported by substantial evidence.

*Id.* As in *Cheatum*, Alao maintained a number of skilled and unskilled positions for extended periods of time, is able to perform some housework, drive, care for herself, and interact with and care for her 10 year old child. She completed high school, albeit with the assistance of special education, and pursued an advanced degree. She left college because she broke her foot, but at the point at which she left had completed fifty-one credits and only had nine credits remaining to get her degree. Moreover, in July 2012 Alao was administered an IQ test by John Keough, a license psychologist, who concluded

7

that she functioned in the borderline range of intelligence and had not consistently put forth her best effort in the testing. All of these facts lend substantial support to the ALJ's conclusion that Alao does not satisfy this prong of Listing 12.05(c), and therefore does not qualify for benefits pursuant to the listing. *See also Ash v. Colvin*, 812 F.3d 686, at 691-92 (8th Cir. 2016) (concluding that the claimant did not show deficits in adaptive functioning where she lived independently, performed personal care tasks and household chores, drove a car, used a computer, operated a cash register, and socialized with others, despite having an IQ in the range to satisfy prong one of Listing 12.05(c)).

Alao also contests the ALJ's conclusion that she failed to satisfy prong one of the listing, requiring a valid verbal, performance, or full scale IQ of 60 through 70. However, as substantial evidence supports the ALJ's conclusion that Alao has no "deficit in adaptive functioning" to satisfy prong two, Alao is not entitled to benefits even if she meets the first prong. As such, the Court will not address Alao's IQ testing.

Alao does not contend that the ALJ erred in her opinion other than in her conclusion that Alao did not satisfy Listing 12.05(c). As substantial evidence supports the ALJ's decision in relation to the listing, the decision is affirmed.

**IV. Conclusion**

For the reasons set forth above, the ALJ's decision is affirmed.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 25, 2016
Jefferson City, Missouri